**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

|  |  |  |
|---|---|---|
| Sierra Club, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| Detroit Edison Company, | ) | |
| DTE Energy Company and DTE | ) | |
| Electric Company, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

---

**COMPLAINT**

---

Plaintiff, Sierra Club, by its undersigned counsel, alleges as follows:

**<u>INTRODUCTION</u>**

1.      This is an action for civil penalties, declaratory and injunctive relief, and costs and fees under the Clean Air Act ("the Act" or "CAA"), 42 U.S.C. §§ 7401, *et seq.* and the federally-enforceable Michigan laws and regulations approved by the U.S. Environmental Protection Agency ("EPA") as part of Michigan's State Implementation Plan ("SIP") under the Act.

2.      Sierra Club seeks an order requiring the Defendants, Detroit Edison Company, DTE Energy Company, and DTE Electric Company, to comply with the requirements of the Act and the Michigan SIP at four coal-fired power plants they own

and operate in Michigan; to forfeit penalties for violations of the CAA at those plants; and to mitigate the effects of its past illegal emissions of air pollution.

3.     Defendants own and operate coal-fired boilers at each of the four power plants at issue in this case.  Each boiler emit thousands of tons of carbon dioxide, nitrogen oxides and sulfur oxides every year as well as significant amounts of particulate matter, carbon monoxide, mercury, and other hazardous air pollutants. Those pollutants contribute to climate change, respiratory distress, cardiovascular disease, and premature mortality.  Nitrogen oxides and sulfur oxides in the air also contribute to acid rain, which sterilizes lakes and damages property.  The presence of those pollutants in the atmosphere is associated with increased hospital admissions and emergency room visits.

## PARTIES

4.     Plaintiff Sierra Club is an incorporated, not-for-profit organization with its headquarters at 85 Second Street, 2nd Floor, San Francisco, California and its Michigan Chapter Office at 109 E. Grand River Avenue, Lansing, Michigan. Its purpose is to preserve, protect, and enhance the natural environment. Its mission includes reducing and eliminating pollution from the mining, combustion, and waste disposal of coal, which negatively affects Sierra Club's members as well as members of the public. Sierra Club has over 1.3 million members and supporters nationwide, including approximately 18,000 members in Michigan.

5.      Defendants Detroit Edison Company and DTE Energy Company are Michigan corporations with offices at One Energy Plaza, Detroit, Michigan 48226.

6.      Detroit Edison Company and DTE Energy Company are each a "person" within the meaning of 42 U.S.C. §§ 7602(e), 7604(a)(1) and (a)(3).

7.      Defendant DTE Electric Company is a wholly-owned subsidiary of DTE Energy Company with offices at One Energy Plaza, Detroit, Michigan 48226.  DTE Electric Company operates under the assumed names of The Detroit Edison Company and Detroit Edison.

8.      DTE Electric Company is a "person" within the meaning of 42 U.S.C. §§ 7602(e), 7604(a)(1) and (a)(3).

9.      Defendants DTE Energy Company and DTE Electric Company (collectively, "DTE") own and operate the four coal-fired power plants at issue here: The St. Clair and Belle River Power Plants, both located at 4901 Pointe Drive, St. Clair, Michigan; the Trenton Channel Power Plant, located at 4659 Jefferson Avenue West, Trenton, Michigan; and the River Rouge Power Plant, located at 1 Belanger Park Drive, River Rouge, Michigan (collectively, the "Power Plants")

## STANDING

10.      Sierra Club has members who live, work, and recreate in and around the cities of St. Clair, Trenton, and River Rouge, Michigan, as well as other areas downwind from the four plants at issue in this case.  These members are negatively impacted by air

3

pollution emissions from the Power Plants.  These members are exposed to air pollution emitted by one or more of the Power Plants, and the health, welfare, and aesthetic and recreational interests these members has been and continues to be harmed by that air pollution.

11.     An order of this Court enjoining Defendants from operating the Power Plants except in accordance with the CAA, requiring Defendants to comply with applicable emission limitations at the Power Plants, imposing civil penalties for violations of the CAA, and mitigating past illegal emissions will redress the injuries to Sierra Club's members because the result will be a reduction in air pollution from the Power Plants.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over the claims set forth in this complaint pursuant to 42 U.S.C. § 7604, 28 U.S.C. §§ 1331, 1355, and 2201.  The relief requested by the Plaintiff is authorized by statute in 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 7604.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in, and all or a substantial part of the events or omissions giving rise to the claims herein occurred in the Eastern District of Michigan.  Venue is also proper pursuant to 42 U.S.C. § 7604(c)(1) because each of the four Power Plants subject to this complaint is located within the Eastern District of Michigan.

## NOTICE

14.     On November 12, 2012, Sierra Club provided notice to the Defendants, the State of Michigan, and the EPA Administrator via certified mail of certain claims for which notice is required in accordance with the requirements of 42 U.S.C. § 7604(b) and 40 C.F.R. part 54.

15.     On January 7, 2013, Sierra Club provided supplemental notice to the Defendants, the State of Michigan, and the EPA via certified mail of additional alleged violations in accordance with the requirements of 42 U.S.C. § 7604(b) and 40 C.F.R. part 54.

16.     More than sixty days have passed since Sierra Club provided notice of the claims alleged herein.

17.     Neither the EPA Administrator nor the State of Michigan has commenced or is diligently prosecuting a civil action in a court of the United States or a state to require compliance with the standards, limitations, or orders of which Defendants are alleged by Sierra Club to be in violation.

## GENERAL ALLEGATIONS

### The Power Plants at Issue

18.     Defendants, individually or collectively, wholly own and operate the St. Clair, Belle River, Trenton Channel, and River Rouge Power Plants.

19.     The St. Clair Power Plant is a fossil fuel-fired electric utility steam generating station located in St. Clair County, Michigan.  The St. Clair Power Plant has six operational coal-fired boilers.  Units 1-4 are dry-bottom wall-fired boilers which commenced operation in or around 1953 and are each connected to an approximately 160 MW turbine generator.  Unit 5, a 300 MW cyclone boiler was taken out of service in 1979.  Units 6 and 7 are tangentially-fired boilers which commenced operation in or around 1961 and 1969 and are connected to a 320 MW and a 450 MW turbine, respectively.

20.     The Belle River Power Plant is a fossil fuel-fired electric utility steam generating station located next to the St. Clair Power Plant in St. Clair County, Michigan.  The Belle River plant consists of two operating coal-fired units.  Units 1 and 2 are dry-bottom wall-fired boilers which commenced construction in 1978 and began operation in 1984 and 1985, respectively.

21.     The Trenton Channel Power Plant is a fossil fuel-fired electric utility steam generating station located in Wayne County, Michigan.  The Trenton Channel plant consists of five operating coal-fired units.  Units 16, 17, 18, and 19 are small tangentially-fired boilers that are connected to two 120 MW turbines that commenced operation in 1949 and 1950, respectively.  The larger unit, Unit 9A, is a tangentially-fired boiler that began operation in 1968 and is connected to a 520 MW turbine.

6

22.     The River Rouge Power Plant is a fossil fuel-fired electric utility steam generating station located in Wayne County, Michigan.  The River Rouge plant consists of two operating coal-fired units, which occasionally co-fire blast furnace gas from a nearby steel mill.  Unit 2 is a tangentially-fired boiler which began operation in or around 1957 and is connected to a 260 MW turbine.  Unit 3 is a dry-bottom wall-fired boiler which commenced operation in or around 1958 and is connected to a 300 MW turbine.  Unit 1, a 260 MW dry-bottom wall-fired boiler was taken out of service in the early 1980s and repowered on natural gas in or around 2000.

### The Clean Air Act

23.     The Clean Air Act requires that the EPA promulgate National Ambient Air Quality Standards (NAAQS), which are upper limits on air pollution in the ambient air, to protect public health and welfare with an adequate margin of safety, 42 U.S.C. § 7409.

24.     42 U.S.C. § 7410, requires each state to adopt and to submit to EPA for approval a State Implementation Plan (SIP) that provides for the attainment and maintenance of the NAAQS.  SIP requirements are federally enforceable in citizen suits under 42 U.S.C. § 7604(a)(1).

25.     Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources."  The purpose of Title V is to

ensure that all "applicable requirements" for compliance with the Clean Air Act are collected in one place and that sufficient compliance testing and reporting occur.

26.     EPA granted interim approval of the State of Michigan's Title V operating permit program effective on February 10, 1997.  EPA granted final approval effective on November 30, 2001.  40 C.F.R. Part 70, Appendix A.  Michigan's Title V operating permit program is codified at Mich. Admin. Code R. 336.1210-336.1218 ("Rule 210-218").

27.     The Act and Michigan's Title V operating permit program have, at all relevant times, made it unlawful for any person to violate any requirement of a permit issued under Title V, or to operate a major source except in compliance with a Title V permit.  42 U.S.C. § 7661a; 40 C.F.R. § 70.7(b); Mich. Admin. Code R. 336.1210(1).

28.     The Act and Michigan's Title V operating permit program have, at all relevant times, required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Act and the requirements of the applicable SIP.  42 U.S.C. § 7661c(a); 40 C.F.R. § 70.6(a)(1); Mich. Admin. Code R. 336.1213.

29.     Rule 213 in Michigan's Title V operating permit regulations further specify that all terms and conditions of a Title V operating permit that are designated in

the permit as federally enforceable are enforceable by citizens under the provisions of

the Clean Air Act.  Mich. Admin. Code R. 336.1213(1)(a).

### Limits on the Power Plants' Opacity in the Michigan SIP

30.    "Opacity" refers to a facility's visible emissions.  Opacity is a

measurement of "the degree to which an emission reduces the transmission of light or

obscures an observer's view."  Mich. Admin. Code R. 336.1115(a).  Opacity is measured

as a percentage; a measurement of 100% opacity means that no light is transmitted

through the plume, and a measurement of 0% opacity means that all light is transmitted

through the plume.

31.    Opacity is a general indicator of the amount of particulate matter emitted

from the source in question.  The higher the opacity percentage, the more particulate

matter emitted by the source.

32.    Both the EPA and the State of Michigan use opacity limits as a means to

ensure that emissions of particulate matter is sufficiently controlled.

33.    The Michigan SIP includes the following limitation on opacity:

> Except as provided in subrules (2), (3), and (4) of this rule, a
> person shall not cause or permit to be discharged into the
> outer air from a process or process equipment a visible
> emission of a density greater than the most stringent of the
> following: (a) A 6-minute average of 20% opacity, except for
> 1 6-minute average per hour of not more than 27% opacity.
> (b) A limit specified by an applicable federal new source
> performance standard. (c) A limit specified as a condition of
> a permit to install or permit to operate.

Mich. Admin. Code R. 336.1301(1).  Subrules (2), (3), and (4) of Mich. Admin. Code R. 336.1301 do not apply to Defendants.

34.     Mich. Admin. Code R. 336.1301 was first approved by EPA as part of Michigan's SIP on June 11, 1992.  *See* 57 Fed. Reg. 24,752 (June 11, 1992).  Subsequent revisions to Rule 336.1301 occurred in 2005 and 2006, and were also approved by EPA as part of Michigan's SIP.  *See* 70 Fed. Reg. 77,113 (December 29, 2005); 71 Fed. Reg. 31,093 (June 1, 2006).

35.     The current version of Rule 336.1301, quoted above in paragraph 33, has been a part of Michigan's EPA-approved SIP at all times since at least June 1, 2006 and is therefore federally enforceable under the Clean Air Act's citizen suit provision.

**Limits on the Power Plants' Opacity in Applicable Federal Regulations**

36.     EPA has promulgated new source performance standards ("NSPS") under authority of 42 U.S.C. § 7411(b), one or more of which are applicable to the Power Plants.  These NSPS regulations are codified at 40 C.F.R. Part 60.

37.     40 C.F.R. Part 60, Subpart D, includes NSPS for fossil-fuel-fired steam generators.  Subpart D applies to each fossil-fuel-fired steam generating unit of more than 73 megawatts (MW) heat input rate (250 million British thermal units per hour (MMBtu/hr)) that commenced construction after August 17, 1971.  40 C.F.R. § 60.40(a).

38.     Subpart D prohibits the discharge of gasses into the atmosphere that "[e]xhibit greater than 20 percent opacity except for one six-minute period per hour of not more than 27 percent opacity."  40 C.F.R. § 60.42(a)(2).

39.     40 C.F.R. Part 60, Subpart Da, includes NSPS for electric utility steam generating units.  Subpart Da applies to each electric utility steam generating unit that is capable of combusting more than 73 megawatts (MW) (250 million British thermal units per hour (MMBtu/hr)) heat input of fossil fuel and for which construction, modification, or reconstruction commenced after September 18, 1978.  40 C.F.R. § 60.40Da(a).

40.     Subpart Da prohibits the discharge into the atmosphere of "any gases which exhibit greater than 20 percent opacity (6-minute average), except for one 6-minute period per hour of not more than 27 percent opacity."  40 C.F.R. § 40.42Da(b).

41.     Federal NSPS at 40 C.F.R. Subpart Da, including the opacity limit at 40 C.F.R. § 40.42Da(b), apply to, at least, both coal-fired units at the Belle River Power Plant.  Even if one or more of these units commenced construction before September 18, 1978, the limits in 40 C.F.R. § 60.42(a) apply.

**Limits on the Power Plants' Opacity in Applicable Title V Permits**

42.     Each of the four Power Plants at issue in this case hold, operate, and emit air pollutants pursuant to a Title V permit that includes limitations on the opacity from

11

its stacks.  In Michigan, such permits are called Renewable Operating Permits or "ROPs."

43.     The St. Clair and Belle River Power Plants operate under ROP No. MI-ROP-B2796-2009a.  That permit, at sections 1.A..11, 3.A.11, and 3.D.I.2, limits the emissions from all coal-fired units at the St. Clair and Belle River Power Plants to 20% opacity, except for one 6-minute period per hour of not more than 27% opacity.  The predecessor permits contained the same limit.

44.     The River Rouge Power Plant operates under ROP No. MI-ROP-B2810-2012.  That permit, at section 1.A-S1.11 (page 7) and at section 1, FG-BOILERS 2&3, VI.2 (page 26), limits the emissions from units 2 and 3 at the River Rouge Power Plant to 20% opacity, except for one 6-minute period per hour of not more than 27% opacity.  Predecessor permits for the plant contained the same limit.

45.     The Trenton Channel Power Plant operates under ROP No. 199600204.  That permit, at sections 1.A.2 (page 6) and 2.A.2 (page 57), limits the emissions from all coal-fired units at the Trenton Channel Power Plant to 20% opacity, except for one 6-minute period per hour of not more than 27% opacity.  Predecessor permits for the plant contained the same limit.

46.     The opacity limits in the Title V permits for the St. Clair, Belle River, River Rouge, and Trenton Channel Power Plants are federally enforceable under the CAA's

citizen suit provision.  42 U.S.C. § 7604(a)(1), (f)(4); Mich. Admin. Code R. 336.1213(1)(a).

## Defendants' Reporting of Opacity Emissions

47.     Each of the Power Plants operates a continuous opacity monitoring system ("COMS") that measures and records the opacity at each boiler that is subject to an opacity limitation in six-minute increments.

48.     Defendants are required to report each period of excess opacity emissions on a quarterly basis to the Michigan Department of Environmental Quality ("MDEQ"). These quarterly opacity reports must identify the magnitude, in actual percent opacity, of all six-minute averages of opacity more than the applicable opacity standard for each hour of operation.

49.     Defendants' quarterly reports of excess opacity emissions must be accompanied by a Renewable Operating Permit Report Certification, signed by responsible official on behalf of Defendants, containing the following certification: "I certify that, based on information and belief formed after reasonable inquiry, the statements and information in this report and the supporting enclosures are true, accurate and complete."  False certifications are violations of the Clean Air Act and are punishable by civil and criminal sanctions.

According to the reports submitted by Defendants to the State of Michigan, the St. Clair, Belle River, Trenton Channel, and River Rouge Power Plants have violated their opacity

limits on hundreds of occasions in recent years.  From the period January 1, 2007

through June 30, 2012, the Power Plants collectively emitted excess opacity from their

coal-fired boilers during 1,499 separate 6-minute periods, as shown in the table below.

While June 30, 2012, was the last publicly-available opacity data prior to the notices of

intent provided to Defendants, these violations have continued since June 30, 2012.

*DTE Opacity Exceedences (1/1/07 – 6/30/12)*

| Power Plant / Unit | Total Minutes of Reported Excess Opacity Emissions | Total Discrete 6-Minute Periods of Excess Opacity |
|---|---|---|
| Belle River Unit #1 | 1,158 | 193 |
| Belle River Unit #2 | 984 | 164 |
| St. Clair Unit #1 | 156 | 26 |
| St. Clair Unit #2 | 138 | 23 |
| St. Clair Unit #4 | 36 | 6 |
| St.  Clair Unit #6 | 18 | 3 |
| St. Clair Unit #7 | 1,368 | 228 |
| River Rouge Unit #2 | 246 | 41 |
| River Rouge Unit #3 | 456 | 76 |
| Trenton Channel Unit #6 | 2,207 | 367 |
| Trenton Channel Unit #7 | 2,232 | 372 |
| **Total 6-Minute Periods of Excess Opacity Emissions:** | | **1,499** |

### FIRST CLAIM FOR RELIEF
### (Violation of Title V Permit Limits on Opacity at the
### Belle River and St. Clair Power Plants)

50.     Paragraphs 1 through 49 are realleged and incorporated herein by

reference.

51.     On numerous occasions, Defendants emitted visible emissions from the

coal-fired boilers and stacks of the St. Clair and Belle River Power Plants in excess of the

opacity limitations contained in sections 1.A.11, 3.A.11, and 3.D.I.2 of ROP No. MI-ROP-B2796-2009a, and its predecessors.

52.     Each 6-minute period during which visible emissions from the St. Clair and Belle River Power Plants exceeded the applicable opacity limit for each unit or stack in ROP No. MI-ROP-B2796-2009a, and its predecessor permits, constitutes a separate and distinct violation of that permit and the Clean Air Act.  42 U.S.C. § 7661a(a); Mich. Admin. Code R. 336.1210(1).

53.     These violations have been repeated and entitle Plaintiff to injunctive relief and civil penalties. 42 U.S.C. §§ 7413 and 7604.

## SECOND CLAIM FOR RELIEF
### (Violation of the Opacity Limits in the Michigan SIP at the Belle River and St. Clair Power Plants)

54.     Paragraphs 1 through 49 are realleged and incorporated herein by reference.

55.     On numerous occasions, Defendants emitted visible emissions from the coal-fired boilers and stacks of the St. Clair and Belle River Power Plants in excess of the opacity limitations contained in the Michigan SIP at Mich. Admin. Code R. 336.1301.

56.     Each 6-minute period during which visible emissions from the St. Clair and Belle River Power Plants exceeded the applicable opacity limit in Mich. Admin. Code R. 336.1301 constitutes a separate and distinct violation of the Michigan SIP and the Clean Air Act.

15

57.     These violations have been repeated and entitle Plaintiff to injunctive relief and civil penalties, 42 U.S.C. §§ 7413 and 7604.

## THIRD CLAIM FOR RELIEF
**(Violation of the Opacity Limits in Federal NSPS Regulations at the Belle River and St. Clair Power Plants)**

58.     Paragraphs 1 through 49 are realleged and incorporated herein by reference.

59.     On numerous occasions, Defendants emitted visible emissions from the coal-fired boilers and stacks of the St. Clair and Belle River Power Plants in excess of the opacity limitations contained in applicable NSPS regulations at 40 C.F.R. § 60.42(a)(2) and 40 C.F.R. § 40.42Da(b).

60.     Each 6-minute period during which visible emissions from the St. Clair and Belle River Power Plants exceeded the opacity limit in the applicable federal NSPS regulations constitutes a separate and distinct violation of the Clean Air Act.  42 U.S.C. § 7411(e).

61.     These violations have been repeated and entitle Plaintiff to injunctive relief and civil penalties. 42 U.S.C. §§ 7413 and 7604.

## FOURTH CLAIM FOR RELIEF
**(Violation of Title V Permit Limits on Opacity at the River Rouge Power Plant)**

62.     Paragraphs 1 through 49 are realleged and incorporated herein by reference.

63.     On numerous occasions, Defendants emitted visible emissions from the coal-fired boilers and stacks of the River Rouge Power Plant in excess of the opacity limitations contained in section 1.A-S1.11 (page 7) and section 1, FG-BOILERS 2&3 (page 26) of ROP No. MI-ROP-B2810-2012 and predecessor permits.

64.     Each 6-minute period during which visible emissions from the River Rouge Power Plant exceeded the applicable opacity limit for each unit or stack in ROP No. MI-ROP-B2810-2012, or in the predecessor permits, constitutes a separate and distinct violation of that permit and the Clean Air Act.  42 U.S.C. § 7661a(a); Mich. Admin. Code R. 336.1210(1).

65.     These violations have been repeated and entitle Plaintiff to injunctive relief and civil penalties. 42 U.S.C. §§ 7413 and 7604.

## FIFTH CLAIM FOR RELIEF
### (Violation of the Opacity Limits in the Michigan SIP at the River Rouge Power Plant)

66.     Paragraphs 1 through 49 are realleged and incorporated herein by reference.

67.     On numerous occasions, Defendants emitted visible emissions from the coal-fired boilers and stacks of the River Rouge Power Plant in excess of the opacity limitations contained in the Michigan SIP at Mich. Admin. Code R. 336.1301.

68.     Each 6-minute period during which visible emissions from the River Rouge Power Plant exceeded the applicable opacity limit in Mich. Admin. Code R.

17

336.1301 constitutes a separate and distinct violation of the Michigan SIP and the Clean Air Act.

69.     These violations have been repeated and entitle Plaintiff to injunctive relief and civil penalties, 42 U.S.C. §§ 7413 and 7604.

**SIXTH CLAIM FOR RELIEF**
**(Violation of Title V Permit Limits on Opacity at the
Trenton Channel Power Plant)**

70.     Paragraphs 1 through 49 are realleged and incorporated herein by reference.

71.     On numerous occasions, Defendants emitted visible emissions from the coal-fired boilers and stacks of the Trenton Channel Power Plant in excess of the opacity limitations contained in sections 1.A.2 (page 6) and 2.A.2 (page 57) of ROP No. 199600204.

72.     Each 6-minute period during which visible emissions from the Trenton Channel Power Plant exceeded the applicable opacity limit for each unit or stack in ROP No. 199600204 constitutes a separate and distinct violation of that permit and the Clean Air Act.  42 U.S.C. § 7661a(a); Mich. Admin. Code R. 336.1210(1).

73.     These violations have been repeated and entitle Plaintiff to injunctive relief and civil penalties.  42 U.S.C. §§ 7413 and 7604.

**SEVENTH CLAIM FOR RELIEF**
**(Violation of the Opacity Limits in the Michigan SIP at the**
**Trenton Channel Power Plant)**

74.     Paragraphs 1 through 49 are realleged and incorporated herein by reference.

75.     On numerous occasions, Defendants emitted visible emissions from the coal-fired boilers and stacks of the Trenton Channel Power Plant in excess of the opacity limitations contained in the Michigan SIP at Mich. Admin. Code R. 336.1301.

76.     Each 6-minute period during which visible emissions from the Trenton Channel Power Plant exceeded the applicable opacity limit in Mich. Admin. Code R. 336.1301 constitutes a separate and distinct violation of the Michigan SIP and the Clean Air Act.

77.     These violations have been repeated and entitle Plaintiff to injunctive relief and civil penalties, 42 U.S.C. §§ 7413 and 7604.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sierra Club respectfully prays for this Court to:

A.     Declare that the Defendants have violated the applicable permit limits on visible emissions;

B.     Declare that the Defendants have violated the applicable Michigan State Implementation Plan limits on visible emissions;

19

C.      Declare that Defendants have violated applicable New Source Performance Standards limits on visible emissions;

E.      Enjoin Defendants from operating the Belle River, St. Clair, River Rouge, and Trenton Channel Power Plants except in complete compliance with applicable limits and requirements of their Title V Permits, federal NSPS, and the Michigan SIP;

F.      Order the Defendants to immediately comply with the statutory and regulatory requirements cited in this Complaint;

G.      Order the Defendants to remedy their past and ongoing violations by, *inter alia*, requiring the Defendants to install any necessary and appropriate pollution controls or to convert and/or operate their boilers on natural gas  to avoid additional violations and to off-set historic unlawful emissions;

H.      Order the Defendants to take appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Act alleged above;

I.      Order the Defendants to disgorge profits and other benefits that were improperly obtained through, or as a direct result of, the violations set forth herein;

J.      Order the Defendants to pay civil penalties, including a beneficial mitigation project pursuant to 42 U.S.C. § 7604(g)(2) that will reduce pollution in the immediate vicinity of the Belle River, St. Clair, River Rouge, and Trenton Channel

Power Plants, where Sierra Club's members work, live, and recreate and, therefore, improve the air quality that is harming Sierra Club's members;

K.      Order the Defendants to pay Sierra Club's costs of this action, including reasonable attorney fees, pursuant to 42 U.S.C. § 7604(d);

L.      Retain jurisdiction over this action to ensure compliance with the Court's Order; and

M.      Order any other relief that the Court finds is just and equitable.

Respectfully submitted this 12th Day of March, 2013.

s/ Nick Schroeck
GREAT LAKES ENVIRONMENTAL LAW CENTER
440 Burroughs Street, Box 70
Detroit, Michigan 48202
(313) 820-7797
nschroeck@wayne.edu
P#70888

McGILLIVRAY WESTERBERG & BENDER LLC
David C. Bender
211 S. Paterson Street, Ste 320
Madison, WI 53703
Tel: (608) 310-3560
Fax: (608) 310-3561
bender@mwbattorneys.com
(Application for Admission pending)

*Attorneys for Plaintiff Sierra Club*