UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIERRA CLUB,

               **Plaintiff,**                  **CIVIL ACTION NO. 13-CV-11103**

        **vs.**                        **DISTRICT JUDGE SEAN F. COX**

                                         **MAGISTRATE JUDGE MONA K. MAJZOUB**

DTE ENERGY COMPANY, et al.,

               **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Pending before the Court are Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (docket no. 16) and Defendants' Motion to dismiss under Fed. R. Civ. P. 12(b)(1) (docket no. 17). Plaintiff responded to each of Defendants' Motions (docket nos. 22 and 26), and Defendants filed Replies (docket nos. 28 and 29). The Motions have been referred to the undersigned for consideration. (Docket no. 32.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation.[1]

I.      **Recommendation**

For the reasons that follow, the Court recommends denying Defendants' Motion to Dismiss [17]. The Court further recommends granting in part and denying in part Defendants' Motion to Dismiss [16]. The Court should find that Plaintiff is time-barred from bringing any claims, whether for equitable relief or civil penalties, arising out of alleged violations that occurred before January

_____

[1]The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

13, 2008.  As discussed herein, Plaintiff's Amended Complaint should be dismissed, but Plaintiff should be permitted to file a Second Amended Complaint that includes only those claims arising out of alleged violations that occurred on or after January 13, 2008.

**II.    Report**

       **A.    Facts**

       Defendants own and operate several coal-fired boilers at four power plants at issue in this matter: The St. Clair, Belle River, Trenton Channel, and River Rouge Power Plants.  (Docket no. 20 ¶¶ 3, 9.)  According the Plaintiff, each of the plants operates the following, relevant, coal-fired boilers:

- St. Clair: four units that commenced operation in or around 1953, one unit that commenced operation in or around 1961, and one unit that commenced operation in or around 1969;

- Belle River: two units on which construction commenced in 1978 and which began operating in 1984 and 1985 respectively;

- Trenton Channel: four units that commenced operation in 1949 and 1950, and one unit that began operating in 1968; and

- River Rouge: one unit that began operating in 1957, and one unit that commenced operation in or around 1958.

(Docket no. 1 ¶¶ 22-25.)

       As will be discussed herein, Defendants' power plants are subject to certain "opacity" regulations promulgated under the Clean Air Act, including a State Implementation Plan (SIP), permit requirements under Title V of the Act, and the EPA's new source performance standards

(NSPS).  (*See* docket no. 1 ¶¶26-49.)  In general, as applied in this matter, these regulations require that Defendants' plants do not discharge a greater density of visible emissions into the air than those that cause "a 6-minute average of 20% opacity, except for 1 6-minute average per hour of not more than 27% opacity."  *See* Mich. Admin. Code R. 336.1301(1).  Each of the plants is equipped with a continuous opacity monitoring system (COMS), which monitors the opacity at each boiler; Defendants are required to report any violations of the opacity limits to the State of Michigan.  (*See* docket no. 1 ¶¶ 50-52.)  While the applicability of certain provisions to certain plants is at issue in the instant motions, Plaintiff alleges that Defendants' June 30, 2012 opacity report to the State of Michigan showed a total of 1,499 violations at the four plants (collectively) between January 1, 2007, and June 30, 2012.  (*Id.* ¶ 53.)

Plaintiff, a non-profit environmental concern with 18,000 members in Michigan, many of whom Plaintiff alleges have been directly impacted by Defendants' opacity-limit violations, provided notice of its claims to Defendants, the State of Michigan, and the EPA Administrator on November 12, 2012.  (*Id.* ¶ 17.)  Plaintiff provided a supplemental notice on January 7, 2013.  (*Id.* ¶ 18.)  When the State of Michigan and the EPA failed to take action, Plaintiff filed the instant Complaint for declaratory relief, injunctive relief, and civil penalties.  (*Id.* ¶¶ 1, 19-20.)  Defendants now seek dismissal of Plaintiff's claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Docket nos. 16 and 17.)

### B.   Standard of review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction by attacking the claim on its face, in which case all factual allegations of the Plaintiff must be considered as true, or by attacking the factual basis for jurisdiction.  *DLX, Inc.*

*v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).  If the factual basis for jurisdiction is challenged, the court must weigh the evidence, and the plaintiff bears the burden of proving jurisdiction.  *Id.*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations and citations omitted).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To make this determination, a court may apply the following two-part test: (1) "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth; and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise

4

to an entitlement to relief." *Id.* at 679.

## C.   Analysis

In support of their motions to dismiss, Defendants assert the following: (1) Plaintiff's claims should be dismissed in their entirety because Plaintiff's complaint does not establish standing, or in the alternative, the Court should allow limited discovery to determine if Plaintiff has standing in this matter; (2) portions of Plaintiff's First and Fourth Claims for Relief should be dismissed for lack of subject-matter jurisdiction where Plaintiff failed to comply with the Act's notice requirements; and (3) Plaintiff's claims for any alleged violations that occurred before March 13, 2008, are barred by the applicable Statute of Limitations.[2]  (Docket nos. 16 and 17.)

### 1.   Defendants' Motion to Dismiss for Lack of Standing

#### a.   Injury in fact

"Standing to sue is part of the common understanding of what it takes to make a justiciable case." *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  Standing, at a minimum, requires that a plaintiff establish the existence of three elements: (1) injury in fact, "a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical;" (2) causation, "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant;" and (3) redressability, "a likelihood that the requested relief will redress the alleged injury." *Id.* (internal quotations and citations omitted).  For an organization to establish standing, it must show, among

---

[2]Defendants also assert that Plaintiff's claims for alleged NSPS violations at the St. Clair Plant should be dismissed, but Plaintiff has removed such claims from its First Amended Complaint.  (*See* docket no. 16 at 14; docket no. 26 at 16.)  Thus, Defendants' Motion with regard to this issue is moot.

other things, that at least one of its members would have standing to sue. *See Fednav Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008).

Defendants assert that "'[o]pacity is not a pollutant, but instead a measure of the light-blocking property of a plant's emissions.'" (Docket no. 17 at 18 (quoting *Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1341 (11th Cir. 2005)).) Thus, Plaintiff's allegations that its members are negatively impacted, exposed to, or harmed by air pollution are insufficient to establish standing because the alleged harm is not fairly traceable to the alleged violation of opacity limits. (*Id.*) Moreover, Defendants contend, Plaintiff has not alleged any injury aside from the following general allegation:

> Sierra Club has members who live, work, and recreate in and around the cities of St. Clair, Trenton, and River Rouge, Michigan, as well as other areas downwind from the four plants at issue in this case. These members are negatively impacted by air pollution emissions from the Power Plants, including the Defendants' emissions of particulate matter pollution. These members are exposed to air pollution emitted by one or more of the Power Plants, and the health, welfare, and aesthetic and recreational interests (sic) these members has (sic) been and continues (sic) to be harmed by that air pollution.

(Docket no. 20 ¶ 13.) Plaintiff contends that "according to the [EPA], opacity is used as a surrogate for [particulate matter] emissions and provides qualitative information on the operation and maintenance of particulate control equipment." (Docket no. 22 at 13 (quotation omitted).) Therefore, although brought for violations of opacity requirements, Plaintiff's claims include redress for harm caused by air pollution. (*Id.* at 13-14.)

Defendants contend that "the First Amended Complaint does not indicate whether any of Sierra Club's members has, in fact, been physically exposed to pollution as a result of the individual opacity exceedences or whether any of its members has been deterred from a particular activity due to such exceedences." (Docket no. 28 at 5.) Defendants are correct. While Plaintiff asserts that its

6

members are "negatively impacted" and that the air pollution has "harmed" the "health, welfare and aesthetic and recreational interests" of its members, Plaintiff has not asserted what "negative effect" has occurred or how its members have been "harmed."

Nevertheless, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotations and citation omitted). Defendants' argument that Plaintiff has failed to establish (as opposed to plead) standing is premature; Defendants' argument is more properly considered on a motion for summary judgment. *See Dwayne B. v. Granholm*, No. 06-13548, 2007 WL 1140920, *4 (E.D. Mich. Apr. 17, 2007) (Edmunds, J.). Plaintiff's general allegations are sufficient to support its standing to bring the instant claims at this stage of the litigation.

### b.     Individual Allegations

Defendants also assert that Plaintiff "has not established with particularity that it has standing to bring suit for each of the alleged [1,499 separate] violations" at issue in this matter. (Docket no. 17 at 20.) Defendants contend that Plaintiff must establish that "one of its members was injured by each of the alleged 1499 [opacity] exceedences" because the [exceedences are so infrequent and transient, a plausible claim of concrete and particularized injury would require an explanation of the circumstances under which (sic) Sierra Club members saw the exceedence and was injured by it." (*Id.* at 21-22.) As Plaintiff argues, however, Defendants provide no support for this assertion. To the contrary, Plaintiff draws the Court's attention to several cases in which Courts have allowed

7

Plaintiff to proceed in similar (albeit not identical)[3] circumstances. (*See* docket no. 22 at 15 (citations omitted).)

The Court agrees with Plaintiff. Plaintiff alleged that its members were harmed by the violations at issue. And as noted, at the pleadings stage, such general factual allegations are sufficient.

### c.    Defendants' Request for Limited Discovery

Defendants note that "where subject matter jurisdiction is being challenged, the trial court has the authority to weight the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." (Docket no. 17 at 22 (citing *Land v. Dollar*, 330 U.S. 731, 735 & n.4 (1974)).) And unlike Motions to Dismiss under Fed. R. Civ. P. 12(b)(6), a court may allow limited discovery and consider evidence in determining a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1). Here, however, the Court finds that such discovery is unnecessary at this stage of the litigation. Therefore, the Court recommends that Defendants' Motion to Dismiss with regard to this issue be denied.

### 2.    Defendants' Motion to Dismiss for Failure to comply with CAA Notice Requirements

No action may be commenced under the Clean Air Act "prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order." 42 U.S.C. § 7604(b)(1)(A). Such notice "shall include sufficient information to permit the recipient to identify

---

[3]Defendants note that the violations alleged in the cases cited by Plaintiff include particulate matter violations and a greater number of opacity exceedences than the violations alleged in the instant matter. Whether a plaintiff has standing, however, is a matter of law, not a matter of degree.

the specific standard, limitation, or order which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name and address of the person giving the notice." 40 C.F.R. § 54.3(b). Strict compliance with this notice provision is a jurisdictional prerequisite to bringing a civil action under the CAA, *Nat'l Parks Conservation Ass'n, v. Tenn. Valley Auth.*, 175 F.Supp.2d 1071, 1077 (E.D. Tenn. 2001), but such notice is sufficient if it identifies the alleged violations, the person responsible for the alleged violations, and the applicable standard forming the basis for the alleged violations, *see Ellis v. Gallatin Steel Co*, 390 F.3d 461, 475 (6th Cir. 2004).

Defendants acknowledge that Plaintiff sent letters to Defendants on November 9, 2012 and January 7, 2013 alleging that the St. Clair, Belle River, and River Rouge Power Plants had violated opacity limits. (Docket no. 17 at 24.) In the letters, Plaintiff identified the bases for the allegedly violated opacity limits as those contained in permit ROP NO. MI-ROP-B2796-2009a (with regard to St. Clair and Belle River) and permit ROP NO. MI-ROP-B2810-2012 (with regard to River Rouge). (*Id.*) Plaintiff based the allegations in its Complaint on violations of the same permits but added the language "and its predecessor permits" to the allegations. (*See* docket no. 20 ¶¶ 56, 68.) Thus, Defendants argue, Plaintiff failed to give proper notice of the basis for their claims as required by the CAA. Plaintiff asserts that the opacity limits in the current permits and the predecessor permits are identical and that the dates of the alleged violations were included; therefore, Defendants were aware of the alleged violations, their responsibility for such violations, and the applicable standard forming the basis of the violations. (Docket no. 22 at 19-21.)

9

The Court agrees with Plaintiff. Although strict compliance with the Act is required, the Act does not require a plaintiff to identify the specific permit number under which it intends to bring a claim. The Act only requires that a plaintiff have identified the applicable standard forming the basis of the violation. Here, the "applicable standard" was the opacity limit of "20% opacity, except for 1 6-minute period per hour of not more than 27% opacity." That standard was the same under all of the applicable permits. Moreover, Plaintiff identified the dates between which the alleged violations occurred. Presumably, Defendants were aware of the permits under which they were operating during those times. Defendants' argument that it did not have notice of the permits under which Plaintiff intended to bring its claim is disingenuous at best. Therefore, the Court should deny Defendants' Motion with regard to this issue.

### 3.    Defendants' Motion to Dismiss based on the Statute of Limitations

Actions for civil fines, penalties, or forfeiture are subject to a five-year statute of limitations under the CAA:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . .

28 U.S.C. § 2462. Plaintiff filed its Complaint for declaratory judgment, injunctive relief, and civil fines and penalties on March 12, 2013, alleging violations occurring between January 1, 2007, and June 30, 2012. (*See* docket no. 1.) Thus, Defendants assert, Plaintiff's claims for any violations that occurred before March 13, 2008, are time barred. (Docket no. 16 at 13.) And because Plaintiff's Complaint does not delineate which alleged violations occurred on which dates, Plaintiff's Complaint is defective. (*Id.*) Defendants, therefore, ask the Court to dismiss Plaintiff's Complaint but provide Plaintiff with leave to file a Second Amended Complaint. (*Id.*) Plaintiff acknowledges

10

that some of its claims for civil penalties may be time barred, but Plaintiff asserts that (1) its claims

for injunctive relief are not barred by the plain language of the statute, and (2) the appropriate date

before which to bar any claims for civil penalties is January 13, 2008, not March 13, 2008.[3]  (*See*

docket no. 26.)

### a.      Plaintiff's Claims for Equitable Relief

As noted, Plaintiff asserts that its claims for injunctive relief are not barred by the applicable

statute of limitations because the Act only sets forth a five-year statute of limitations for actions "for

the enforcement of any civil fine, penalty, or forfeiture."  (Docket no. 26 at 11 (quoting 28 U.S.C.§

2462.)  In support of this contention, Plaintiff cites to four cases wherein the United States sued for

injunctive relief in its sovereign capacity.  (*See id.* at 12 (citing *United States v. Telluride Co.*, 146

F.3d 1241, 1248 (10th Cir. 1998); *United States v. Banks*, 115 F.3d 916, 918-19 (11th Cir. 1997);

*United States v. Cinergy Corp.*, 397 F. Supp. 2d 1025, 1031 (S.D. Ind. 2005); *United States v. Am.*

*Elec. Power Serv. Corp.*, 136 F. Supp. 2d 808, 811 (S.D. Ohio 2001).  Additionally, Plaintiff cites

to a matter in the U.S. District Court for the Eastern District of Pennsylvania, in which the State of

New Jersey brought suit in its sovereign capacity.

These cases, however, are unpersuasive as the Plaintiff in this matter is not bringing suit as

a sovereign.  To the contrary, as Defendants assert, Plaintiff's contention directly conflicts with the

concurrent remedy doctrine as set forth by the U.S. Court of Appeals for the Sixth Circuit in

*Madison v. Wood*, 410 F.2d 564, 568 (6th Cir. 1969).  Under the doctrine, equitable relief is barred

---

[3]Plaintiff also asserts that it should be permitted to prove violations outside the
limitations period because Defendants' "full compliance history" is a factor in assessing such
penalties.  (Docket no. 26 at 15.)  While this may be correct, Plaintiff's argument relates to
discovery and admissibility as a matter of relevance, not whether Plaintiff should be able to bring
claims and recover for such violations.

"where the applicable statute of limitations . . . bar(s) the concurrent legal remedy." *Id.* (quoting *Cope v. Anderson*, 331 U.S. 461, 464 (1947) (omission in original)) (citing *Swan v. Board of Higher Education of City of New York*, 319 F.2d 56 (2d Cir. 1963)).  In *Madison*, the Court noted that "[b]ecause of the nature of the alleged wrong done to him, Appellant had a concurrent remedy at law for damages which, because of its inadequacy, entitled him to come into equity for more appropriate relief." *Id.*  Nevertheless, the Court held that the statute of limitations barred equitable relief.  *Id.*

Likewise, Plaintiff's claims at law for civil penalties are inadequate, so it is entitled to equitable relief for further redress.  But the availability of equitable relief does not preclude application of the five-year statute of limitations.  Therefore, as discussed below, Plaintiff's claims for equitable relief should be barred to the extent that Plaintiff's claims for civil penalties are barred.

### b.     The Applicable Bar Date

Defendants assert that Plaintiff's claims should be barred for any alleged violations occurring before March 13, 2008. (Docket no. 16 at 12-13.) Although Plaintiff's Complaint alleges violations beginning on January 1, 2007, Plaintiff acknowledges that claims for violations occurring between January 1, 2007 and January 12, 2008 are barred.  (*See* docket no. 26 at 12-14.)  But Plaintiff contends that claims for alleged violations between January 13, 2008 and March 13, 2008 should not be barred because (1) the statutory 60-day notice period equitably tolls the statute of limitations, and (2) the statute of limitations did not begin to run until Defendants submitted the opacity monitoring reports to the MDEQ on or after January 13, 2008.  (*Id.*)

Plaintiff asserts that "courts have widely held that 'in citizen enforcement actions the five-year statute of limitations period is tolled sixty days before the filing of the complaint, to accommodate the statutorily-mandated sixty-day notice period.'" (*Id.* at 13 (quoting *Sierra Club v.*

12

*Chevron U.S.A., Inc.*, 834, F.2d 1517, 1524 (9th Cir. 1987)) (other citations omitted).) Defendants

argue that the cases cited by Plaintiff are merely persuasive and that the Sixth Circuit has held

otherwise. (Docket no. 29 at 6 (citing *Nat'l Parks Conserv. Ass'n. v. TVA*, 480 F.3d 410 (6th Cir.

2007)).) But Defendants' reliance on *Natl'l Parks* is misplaced; in *Nat'l Parks*, the parties neither

raised nor did the court discuss equitable tolling. *See Natl'l Parks Conserv. Ass'n*, 480 F.3d 410.

The Court merely found that the five-year statute of limitations applied to Plaintiff's claims. *Id.* at

419.

The Sixth Circuit does not appear to have formally determined whether equitable tolling

should apply in a CAA case. This Court, however, finds that the rationale expressed by the courts

cited to by Plaintiff is sound:

> By creating the sixty-day notice requirement, Congress has forced a sixty-day delay
> on citizen plaintiffs that does not apply to the EPA or state agencies seeking
> enforcement of permit terms. Congress deemed this delay necessary to allow the
> EPA or state agencies to take action on permit violations that they might have
> overlooked. See S.Rep. No. 414, 92d Cong., 2d Sess., reprinted in 1972 U.S.Code
> Cong. & Admin.News 3668, 3745. If the rule were that only the filing of the citizen
> plaintiffs complaint tolls the statute of limitations, then citizen plaintiffs would be
> faced with a statute of limitations that is effectively two months shorter than that
> imposed on the EPA and state agencies. As indicated above, we think the statute of
> limitations should be the same for citizen plaintiffs and the EPA. Thus, we hold that
> in citizen enforcement actions the five-year statute of limitations period is tolled
> sixty days before the filing of the complaint, to accommodate the
> statutorily-mandated sixty-day notice period.

*Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d at 1523-24 (FN omitted). Therefore, the undersigned

recommends that the Court toll the statute of limitations in this matter from January 13, 2008.

Plaintiff also asserts that "any excess opacity emissions that were identified for the first time

in Defendants' [reports] submitted to the MDEQ on or after January 13, 2008," should not be barred

by the statute of limitations because Plaintiff could not have discovered such violations until the

13

reports were submitted.  (Docket no. 26 at 13-14.)  Defendants argue that such a rule would violate Supreme Court precedent and that "the discovery rule does not apply to the facts of this case because there was nothing preventing [Plaintiff] from discovering the alleged opacity exceedences at the time they occurred," that is, from watching the discharge as it was released from the plants.  (Docket no. 29 at 7-8.)

While the Court does not agree with Defendants that Plaintiff could have discovered the violations by watching the plants, the Court does agree with Defendants that grafting a discovery rule onto the CAA would be in conflict with recent Supreme Court precedent.  Defendants draw the Court's attention to *Gabelli v. SEC*, wherein the Court discussed the applicability of the discovery rule to actions brought under 28 U.S.C. § 2462.  133 S.Ct. 1216, 1223-24 (2013).  While the matter in *Gabelli* dealt with a case brought by the government, the Court's rationale for declining to adopt the discovery rule in such cases appears to apply to citizen suits as well:

> Chief Justice Marshall used particularly forceful language in emphasizing the importance of time limits on penalty actions, stating that it "would be utterly repugnant to the genius of our laws" if actions for penalties could "be brought at any distance of time." *Adams v. Woods*, 2 Cranch 336, 342, 2 L.Ed. 297 (1805).  Yet grafting the discovery rule onto § 2462 would raise similar concerns.  It would leave defendants exposed to Government enforcement action not only for five years after their misdeeds, but for an additional uncertain period into the future.  Repose would hinge on speculation about what the Government knew, when it knew it, and when it should have known it. *See Rotella*, 528 U.S., at 554, 120 S.Ct. 1075 (disapproving a rule that would have "extended the limitations period to many decades" because such a rule was "beyond any limit that Congress could have contemplated" and "would have thwarted the basic objective of repose underlying the very notion of a limitations period").

*Id.* at 1223.  Courts in other circuits have found likewise.  *See, e.g.*, *New Jersey v. RRI Energy Mid-Atl. Power Holdings, LLC*, No. 07CV05298 (E.D. Pa. Mar. 28, 2013) (discussing *Gabelli* and concluding that "the fact that plaintiffs' action was brought as a [CAA] citizen suit does not provide

14

a basis to apply the discovery rule"). Therefore, the undersigned recommends that the Court not subject Plaintiff's claims to a discovery rule; Plaintiff's claims should be barred for any alleged violations that occurred before January 13, 2008.

### c.        The Adequacy of Plaintiff's Complaint

Defendants argue that Plaintiff's Amended Complaint should be dismissed and that Plaintiff be granted leave to file a Second Amended Complaint because "[t]he Complaint does not provide sufficient information to determine which of the alleged violations took place before or after that date." (Docket no. 16 at 13.) The Court agrees. Nothing in Plaintiff's Amended Complaint suggests which of the alleged 1,499 violations occurred on what dates. Plaintiff's Amended Complaint should be dismissed, and Plaintiff should be granted leave to file a Second Amended Complaint, which should only include those violations that occurred on or after January 13, 2008.

### D.        Conclusion

For the above-stated reasons, the Court recommends denying Defendants' Motion to Dismiss [17]. The Court further recommends granting in part and denying in part Defendants' Motion to Dismiss [16]. The Court should find that Plaintiff is time-barred from bringing any claims, whether for equitable relief or civil penalties, arising out of alleged violations that occurred before January 13, 2008. As discussed herein, Plaintiff's Complaint should be dismissed, but Plaintiff should be permitted to file a Second Amended Complaint that includes only those claims arising out of alleged violations that occurred on or after January 13, 2008.

## III.   Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28

U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: October 7, 2013        s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.


Dated: October 7, 2013        s/ Lisa C. Bartlett
                                   Case Manager